UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JORGE CASTILLO,

                Petitioner,

                **OPINION & ORDER**
                06-CV-3388 (SJF)

-against-

JOHN J. DONELLY, SUPERINTENDENT of the
BARE HILL CORRECTIONAL FACILITY,

                Respondent.
------------------------------------------------------------X
FEUERSTEIN, J.

I.    Introduction

On August 14, 2003, *pro se* petitioner Jorge Castillo ("Petitioner") pled guilty to criminal sale of a controlled substance in the second degree in County Court of the State of New York, Suffolk County. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied and dismissed.

II.    Petitioner's Pleadings

A *pro se* plaintiff's submissions are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Faretta v. California, 422 U.S. 806, 834 n. 36 (1975)

1

III.  Background[1]

    A.  Petitioner's Plea

On August 14, 2003, Petitioner appeared with counsel in the County Court of the State of New York, Suffolk County. After Petitioner was placed under oath, the court reviewed with him a pre-plea statement, which was prepared by the Suffolk County District Attorney and signed by Petitioner. P. 3. The document stated that on March 20, May 2, May 31, and June 12, 2002, Petitioner sold a quantity of cocaine to certain individuals. Petitioner stated that he had discussed the statement with counsel and that he understood the statement was being made as part of his cooperation agreement with law enforcement. Petitioner stated that his attorney had read the statement to him, and that he had executed the document of his own free will. P. 3-4.

The court reviewed the proposed plea agreement in which Petitioner would plead guilty to criminal sale of controlled substance in the second degree, a class A-II felony. The court promised an indeterminate sentence of eight (8) years to life, "with a possible downward departure upon the application of the District Attorney." P. 4. Petitioner's counsel noted that the plea was favorable to Petitioner because based upon the evidence counsel was aware of, "[a trial] would have led to . . . a very bad result and one that was unnecessary." P. 4-5.

Responding to questions by the court, Petitioner indicated his understanding that he was pleading guilty to a felony and that he would have a criminal record; that he was waiving his rights to a trial, to cross-examine and confront the State's witnesses, and to present his own evidence; and that a plea of guilty was the same as being found guilty after trial. P. 5-6.

---

[1] Page numbers preceded by "P" refer to the Plea Minutes of August 14, 2003. Page numbers preceded by "S" refer to the Sentencing Minutes of August 6, 2004.

2

Petitioner also denied that any threats or promises had been made to him to induce his plea, other than the promise that the court would sentence him to eight (8) years to life, or less upon the application of the District Attorney. P. 6. Petitioner indicated he was pleading guilty of his own free will, and that he understood that if he was convicted of another felony within the next ten (10) years he might be subject to additional punishment. P. 6-7. He also agreed that he was pleading guilty because he was, in fact, guilty of the offense. P. 5.

Petitioner allocuted that on May 2, 2002, at approximately 8:54 P.M. at the Home Depot parking lot on Route 25 in Selden, in Suffolk County, New York, he sold a quantity of cocaine to an undercover police officer. He knew at the time that he was selling and possessing cocaine, and knew it was illegal to possess or sell cocaine. Petitioner stipulated through counsel that the laboratory report indicated in excess of two (2) ounces of cocaine. P. 7-9.

Petitioner agreed that he understood that he was waiving his right to appeal and waiving any defenses he might have, including defenses of agency and entrapment. P. 9. He also indicated his understanding of those defenses and that he was satisfied that those defenses were not appropriate in his case. P. 9.

Petitioner's counsel stated for the record that although there was no specific promise, based upon Petitioner's willingness to cooperate with the District Attorney's Office, and the nature of the information he gave, he might be considered for a sentence of less than eight (8) years to life. P. 10.

B. Post Plea Procedural Background

On August 6, 2004, Petitioner appeared for sentencing. The prosecutor recommended that Petitioner be sentenced to an indeterminate term of incarceration of four and one-half (4½) years to life. S. 3-4. The court then sentenced Petitioner to an indeterminate term of four and

3

one-half years (4½) to life and imposed a two hundred and ten dollar ($210.00) mandatory surcharge. S. 2-10.

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department solely on the ground that his sentence was excessive. He argued that, based upon his cooperation, his sentence should be reduced to three (3) years to life. The Second Department denied Petitioner's motion to file a *pro se* supplemental brief on July 1, 2005. On July 5, 2005, the Second Department affirmed Petitioner's sentence. See People v. Castillo, 789 N.Y.S.2d 706 (App. Div. 2d Dep't. 2005). Petitioner sought leave to appeal to the New York Court of Appeals which was denied on August 26, 2005. See People v. Castillo, 5 N.Y.3d 804 (2005).

By motion dated December 17, 2004, Petitioner sought, pursuant to New York Criminal Procedure Law ("NYCPL") § 440.20, to set aside his sentence on the ground that he was entitled to apply for a determinate sentence under the State's new drug sentencing provisions set out in Sections 23 and 30 of Chapter 738 of the Laws of New York 2004 (the "Drug Law Reform Act"). On January 31, 2005, the County Court denied Petitioner's motion.

In July 2005, Petitioner moved for an order to be committed to New York's Comprehensive Alcohol and Substance Abuse Treatment Program. On August 9, 2005, the County Court denied Petitioner's motion.

On November 10, 2005, the County Court denied Petitioner's motion to be resentenced under the new drug sentencing guidelines, this time pursuant to Chapter 643 of the Laws of

New York 2005. On December 7, 2005, Petitioner filed a notice of appeal from this Decision and Order.[2]

On June 30, 2006, Petitioner filed the instant petition for a writ of habeas corpus. Petitioner claims that: 1) his sentence is harsh and excessive and should be modified in the interest of justice; 2) he was denied his right to a speedy trial; 3) his plea was not voluntary or knowing; and 4) he received ineffective assistance of both trial and appellate counsel.

IV. The AEDPA

The Anti Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs petitions of incarcerated state court defendants seeking federal habeas corpus relief.

A. Exhaustion

Prior to bringing a petition for habeas corpus relief in federal court, a petitioner "must exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the [prisoner].'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 808 (2d Cir. 2000) (citation omitted, insertions in original). Exhaustion requires that a petitioner fairly present to the highest state court "both the factual and legal premises of the claim he asserts in federal court." Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (internal quotations and citation omitted). A federal habeas corpus petition which contains unexhausted claims should be dismissed, Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), unless there is no longer a state forum available to a petitioner to present his constitutional claim, in which case the federal court shall deem the claim exhausted and deny

---

[2] The Court is unaware of the disposition of this appeal.

5

the claim as if the state court had considered but denied the claim on the basis of a state procedural rule which the petitioner had failed to follow. Coleman v. Thompson, 501 U.S. 727 (1991).

In cases involving petitions containing both exhausted and unexhausted claims, a federal district court may 1) stay the proceeding until such time as the petitioner has returned to state court and exhausted his previously unexhausted claims; 2) dismiss the "mixed" petition, without prejudice, until the claims have been exhausted in state court, unless the claims could not be raised following exhaustion pursuant to the one (1) year statute of limitations prescribed by the AEDPA; 3) give the petitioner an opportunity to withdraw the unexhausted claim or claims; or 4) deny the petition on the merits. Rhines v. Weber, 544 U.S. 269 (2005); Gandarilla v. Artuz, 322 F.3d 182, 186 (2d Cir. 2003). A habeas court may deny on the merits a habeas petition containing unexhausted claims if those claims are "plainly meritless." Rhines, 544 U.S. at 277. See 28 U.S.C. § 2254(b)(2) (permitting federal courts to deny unexhausted habeas claims on the merits).

B. Standard of Review

Pursuant to 28 U. S. C. § 2254(d) an application for a writ of habeas corpus that has met the procedural prerequisites

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U. S. C. § 2254(d). "Adjudication on the merits" requires a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural or other ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000); 28 U.S.C. 2254 § (d)(1). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413; 28 U.S.C. § 2254(d)(1). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). Under the AEDPA, determination of the factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U. S. C. § 2254(e)(1).

A federal habeas court need not engage in even this limited degree of review when the state court decision rests on independent and adequate state procedural grounds. Coleman, 501 U.S. at 750. A habeas court is procedurally barred from review of such claims. This rule applies even where a state court reaches the merits of a petitioner's claim in the alternative.

7

See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision) (emphasis in original). However, this rule is not without exception. Generally, a claim otherwise procedurally barred may be reviewed by a federal court in the event that a habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

V. Analysis

    A. Excessive Sentence

The Eighth Amendment to the United States Constitution proscribes cruel and unusual punishment. U.S. Const. amend. VIII. For purposes of habeas review, however, "[n]o federal Constitutional issue is presented where . . . the sentence is within the range prescribed by State law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Petitioner pled guilty to criminal sale of a controlled substance in the second degree, a class A-II felony. N.Y. Penal Law § 220.41 (McKinney 2000). Under New York law, a sentence for a class A-II felony shall not be less than three (3) years to life nor more than eight (8) years four (4) months to life. N.Y. Penal Law § 70.00 (McKinney 2004). Petitioner's sentence of four and one-half (4½) years to life is clearly within the range prescribed by New York law and therefore raises no constitutional issue for this Court to review.[3] See Underwood

---

[3] Ultimately, Petitioner was sentenced to a little more than half the sentence he could have received pursuant to his negotiated plea agreement.

8

v. Kelly, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989) ("When a sentence is within [the] range, a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal."). See also Guzman v. Fischer, No. 02 Civ. 7448, 2003 WL 21744086, at *20 (S.D.N.Y. July 29, 2003) (collecting cases).

Petitioner's complaint of inaccuracies in his presentence report is also without merit. Section 390.30 of the NYCPL requires that a presentence investigation be performed and that a report of the investigation be submitted to the sentencing judge. Although an error in the report may require resentencing, the error must amount to "misinformation of a constitutional magnitude." United States v. Tucker, 404 U.S. 443, 447 (1972). "In other words, the error must be so egregious, that if accurately presented to the sentencing judge a different result would have been reached." Warren v. Miller, 78 F. Supp. 2d 120, 131 (E.D.N.Y. 2000).

Petitioner claims that the presentence report is in error because it states that he pled guilty to criminal sale of a controlled substance in the first degree, a class A felony, when he actually pled guilty to criminal sale of a controlled substance in the second degree, a class A-II felony. Likewise, Petitioner apparently objects to the trial court judge's repetition of the mistake in the presentence report.

While the presentence report contained an inaccuracy and the trial court judge misspoke, these errors had no impact on the sentence imposed upon Petitioner. A sentence of four and one-half (4½) years to life is completely within the range prescribed by New York law for class A-II felonies. Further, the trial court judge amended the record to reflect that Petitioner pled guilty to criminal sale of a controlled substance in the second degree. See S.

9

11. Accordingly, there is no basis to require resentencing of Petitioner.

B. Petitioner's Remaining Contentions

Petitioner contends that he was denied his right to a speedy trial, his plea was not knowing and voluntary, and that he did not receive effective assistance of either trial or appellate counsel. Petitioner did not raise any of these claims in his direct appeal or by a request for collateral relief. Therefore, all of these claims are unexhausted.

1. Speedy Trial

Petitioner did not raise his speedy trial claim in any state court appeal and there is no longer a state forum in which Petitioner can raise this claim. Accordingly, the claim is deemed exhausted. Petitioner has failed to demonstrate either cause for his failure to follow state procedural rules or prejudice that might result from a failure to review this claim. Petitioner's claim that his failure to raise a speedy trial claim was caused by the ineffectiveness of his appellate counsel has not been exhausted in the New York courts and therefore, cannot be used to establish cause for procedural default. See Murray v. Carrier, 477 U.S. 478, 488-91 (1986). Petitioner has also not demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. Therefore, the claim is dismissed as if it had been exhausted but denied by the state court on procedural grounds.

2. Knowing and Voluntary Plea

Petitioner did not move to withdraw his guilty plea nor did he file a motion to vacate the judgment pursuant to NYCPL § 440.10. Thus, no state court has been presented with this claim. At this juncture, Petitioner cannot move to withdraw his guilty plea but he still could file a motion to vacate the judgment pursuant to NYCPL § 440.10, since this application may

10

be made at any time. Thus, Petitioner still has an "available" state remedy for this claim and as a result, the claim is unexhausted but is not procedurally barred. However, after examining Petitioner's claim, the Court finds it to be without merit and it is therefore denied. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277.

Petitioner argues that his plea was not voluntary and knowing because he was coerced by his trial counsel into pleading guilty. Specifically, Petitioner contends that his counsel told him he would be sentenced to three (3) years of incarceration and that he would be granted bail while awaiting sentencing. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). See also Tollett v. Henderson, 411 U.S. 258, 267 (1973). Any claim of ineffective assistance of counsel arising out of the plea process is governed by the two (2) part standard set out in Strickland v. Washington, 466 U.S. 668, 104 (1984). See Hill, 474 U.S. at 57-58. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

A review of the record indicates that Petitioner's plea was completely voluntary and knowing. As indicated above, the trial court conducted a full plea colloquy, questioning Petitioner about what he was pleading guilty to, why he was pleading guilty, and his understanding of the consequences of that plea. Further, the trial court noted that, based on Petitioner's statements, it was satisfied that Petitioner reviewed the plea agreement with his attorney and understood the nature of the agreement. Petitioner clearly stated that no one threatened him into accepting the plea offer and that he was pleading guilty of his own free will.[4] While Petitioner's counsel did say that based on Petitioner's cooperation, he might be allowed to visit with his family for a short time and that he might be considered for a sentence of less than eight (8) years to life, and as low as three (3) years to life, counsel specifically stated on the record that "there is no specific promise." S. 10. In response, Petitioner stated that he understood. Id. The Supreme Court has held that such declarations made in open court "carry a strong presumption of verity[ ] [and, further,] subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

---

[4] THE COURT: Has there been any threats or promises to induce you to plead guilty? Other than this sentence, again, that Mr. Bonheim has worked out with Mr. Dowling that I will go along with at the time of sentencing with a possible downward departure upon the application of Mr. Dowling. Any other promises made to you today?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will?

THE DEFENDANT: Yes, I am. [S. 6]

12

Petitioner's argument is further undermined by the fact that he waited until nearly three (3) years after his plea and two (2) years after his sentencing to raise any concerns about the voluntariness of his plea. See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997). Petitioner has not presented any evidence to demonstrate that his counsel's advice to plead guilty fell below an objective level of reasonableness or that, but for his counsel's advice, he would not have been convicted of the even more serious crimes for which he was being prosecuted. Accordingly, Petitioner's claim for relief based upon his argument that his guilty plea was not knowing and voluntary because he was coerced by his attorney into pleading guilty is denied.

3. Ineffective Assistance of Trial Counsel[5]

Petitioner did not raise an ineffective assistance of trial counsel claim on direct review of his conviction nor did he file a motion to vacate the judgment pursuant to NYCPL § 440.10. Thus, no state court has been presented with this issue. At this juncture, Petitioner cannot seek review of his claims that his counsel failed to engage in motion practice and make discovery demands because sufficient facts appeared on the record to have permitted the claims to be raised on direct review but Petitioner failed to raise them. See NYCPL § 440.10(2)(c). To the extent that there is no longer a state forum in which Petitioner can raise these claims, they are deemed exhausted. Petitioner has failed to demonstrate either cause for his failure to follow state procedural rules or prejudice that might result from a failure to review these claims. Petitioner's claim that his failure to raise an ineffectiveness of trial counsel claim was caused

---

[5] When discussing Petitioner's ineffective assistance of trial counsel claim, the Court will only address Petitioner's claim that his counsel failed to engage in motion practice and make discovery demands. See Petition at 10. Any issue regarding Petitioner's counsel's conduct relating to Petitioner's plea was discussed in the section titled "Knowingly and Voluntary Plea."

13

by the ineffectiveness of his appellate counsel has not been exhausted in the New York courts and therefore, cannot be used to establish cause for procedural default. See Murray v. Carrier, 477 U.S. 478, 488-91 (1986). Petitioner has also not demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Therefore, the claims are dismissed as if they had been exhausted but denied by the state court on procedural grounds.

4. Ineffective Assistance of Appellate Counsel

Petitioner claims that he received constitutionally ineffective assistance of appellate counsel, but also failed to properly present this claim to the New York courts. A claim of constitutional ineffectiveness of appellate counsel must be presented to the appropriate New York appellate court by application for a writ of error *coram nobis*. People v. Bachert, 69 N.Y.2d 593, 598 (1987). Because this application may be made at any time, Petitioner still has an "available" state remedy for this claim. Thus, any claim of ineffective assistance of appellate counsel is unexhausted but is not procedurally barred. However, after examining Petitioner's claim, the Court finds it to be without merit and it is therefore denied. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Although the test for ineffective assistance of counsel contains two (2) prongs, district courts

need not address both components if a petitioner fails to establish either one. Id. at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id.

In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. Id. at 689. Tactical decisions made after thorough investigation are "virtually unchallengeable." Id. at 690. Further, these standards apply to claims involving the performance of appellate as well as trial-level counsel. See, e.g., Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) (citing Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990)).

The law is clear that when preparing an appeal, an attorney is not required to raise every non-frivolous argument even if asked to do so by his or her client. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). In Jones, the Supreme Court stated that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52. See Warren v. Miller, 78 F. Supp. 2d 120, 134 ("It is counsel's job to ensure that weak arguments are eliminated, so as not to conceal the force of stronger arguments."). See also Welch v. Artus, No. 04-CV-205S, 2007 WL 949652, at *17 (W.D.N.Y. Mar. 29, 2007) ("A lawyer has an obligation to apply his or her independent professional judgment in deciding which arguments to make; counsel need not and should not simply make the arguments a client wishes to make, thereby reducing his or her role to that of a mere mouthpiece for the client.").

In this case, Petitioner's appellate counsel argued for a reduction of Petitioner's sentence in the interests of justice because Petitioner's "over all cooperation with the District Attorney's office was laudatory." Petitioner alleges that his appellate counsel failed to "raise all issues effectively," despite his wishes that he do so. Petitioner does not specify what "all issues" were.

Under the second prong of the <u>Strickland</u> test, Petitioner must show a reasonable probability that the Appellate Division would have ruled differently if his appellate counsel had raised the arguments that Petitioner wished him to (i.e., prejudice). Assuming that Petitioner is referring to his claims that his plea was not knowing or voluntary, he received ineffective assistance of trial counsel, and his speedy trial rights were violated, it is clear that these claims are all without merit and that Petitioner could not make such a showing.

By failing to move to withdraw his guilty plea or to vacate the judgment pursuant to NYCPL § 440.10, Petitioner failed to preserve for appellate review his claim that his plea was involuntary. <u>People v. Bevins</u>, 811 N.Y.S.2d 429, 430 (App. Div. 2d Dep't. 2006) (citations omitted). Therefore, it would have been futile for Petitioner's appellate counsel to argue that Petitioner's plea was involuntarily entered. As a result, Petitioner was not prejudiced by appellate counsel's failure to argue that his plea was not entered into knowingly or voluntarily. Further, as detailed above, there is no evidence to support Petitioner's claim.

Moreover, Petitioner's waiver of the right to appeal would have precluded his ineffective assistance of trial counsel claim.[6] <u>People v. Demosthene</u>, 769 N.Y.S.2d 746 (App.

---

[6] Again, the Court is referring only to Petitioner's claim that his trial counsel failed to engage in motion practice and make discovery demands.

Div. 2d Dep't. 2003) (citations omitted). See also Tollett v. Henderson, 411 U.S. 258, 267 (1973) (petitioner's unconditional guilty plea waived all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea). Therefore, it would have been futile for Petitioner's appellate counsel to argue that Petitioner was denied effective assistance of trial counsel because of his counsel's failure to engage in motion practice and make discovery demands. As a result, Petitioner was not prejudiced by appellate counsel's failure to raise an ineffective assistance of trial counsel claim.

Finally, by pleading guilty, Petitioner waived appellate review of his statutory right to a speedy trial under NYCPL 30.30. People v. O'Brien, 56 N.Y.2d 1009 (1982). However, Petitioner's constitutional speedy trial argument survived both his plea and the express waiver of his right to appeal. People v. Grandberry, 637 N.Y.S.2d 203, 204 (App. Div. 2d Dep't. 1996) (citation omitted). In New York, the following factors are examined in balancing the merits of an assertion that there has been a denial of defendant's constitutional right to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay. People v. Taranovich, 37 N.Y.2d 442, 445 (1975). See also Barker v. Wingo, 407 U.S. 514, 530 (1972) (four (4) factors to be considered in evaluating a constitutional speedy trial claim: the length of the relevant delay, the cause of the delay, the prejudice to the defendant, and the defendant's assertion of his right to a speedy trial). Having reviewed Petitioner's claims and the record prior to his guilty plea, the Court finds that the

delay was neither unreasonable nor prejudicial. Therefore, Petitioner was not prejudiced by appellate counsel's failure to raise a speedy trial claim.

VI. Conclusion

The petition for a writ of habeas corpus is denied and the proceeding is dismissed. Since Petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. See also Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Luciadore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d. Cir. 2000); Kellogg v. Strack, 269 F.3d 100, 102 (2d Cir. 2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED

_____
Sandra J. Feuerstein
United State District Judge

Dated: May 7, 2007
Central Islip, New York

18

Copies:

Jorge Castillo
# 04-A-4491
Bare Hill Correctional Facility
Caller Box 20, 181 Brand Road
Malone, NY 12953

Guy Arcidiacono
Suffolk County District Attorney's Office
Arthur M. Cromarty Court Complex
200 Center Drive
Riverhead, NY 11901